Numbers 24-262, I'm sorry, 632 and 633, Emanuel Zeltser v. Belneftekhim, USA, Inc. Let counsel get up here. And I understand we have Mr. Palkman for the appellant and Mr. Caruso for the appellee. And Mr. Palkman, you would like to reserve four of your 10 minutes for rebuttal. Is that correct? Good morning. Good morning. Your Honor, I'm sorry, is the client, Your Honor? Oh, no, he's not. Why don't you step to the podium so I can hear you, Mr. Palkman? Yes. First, first of all, I had my question, which I don't think you heard is you requested to reserve four of your 10 minutes for oral argument. Is that correct? Yes. Okay. And what was your question? My thing is, in case anything, he's with me because he was on the case from the beginning. Is this another counsel? Yes. Yes. Of course, he's welcome to sit with you at counsel table. Okay. Thank you. That's why we have four chairs. Wonderful. Thank you. Very good. Mr. Palkman, whenever you're ready. May it please the court. My name is Joseph Palkman. I represent the estate of Emanuel Zeltzer. I will address jurisdiction first and then the sanctions ruling and fraud claim. Mr. Zeltzer was a New York attorney. He and his assistant, Vladlena Funk, were lured to London from New York under the guise of business negotiations involving Belneft Kim, Belarus's largest petro chemical company. We're aware of the background. Thank you, Mr. Palkman. Okay. Considering that you've only left yourself six minutes for your principle argument, what is the jurisdictional argument you wish to address? Okay. Defendants argued that this court lacks jurisdiction because the estate voluntarily dismissed its claims with prejudice and Mr. Zeltzer's claims were not rejected on the merits. This court has routinely found appellate jurisdiction after voluntary dismissals. This court held in 2004 in New York State Telecommunications Association, Inc., V. James, which is 101F4th at 135, that rejection of the plaintiff's claims as a matter of law is not required to satisfy appellate jurisdiction. The case disposes of defendant's entire argument. Our appeal brief cites new ways of- But how does the case, how does the decision of the district court resolve your entire case? It excludes certain, or it refuses, I'm sorry. Yeah. The district court excluded certain evidence, right? Yes. Would you like to answer that? Oh no, counsel. Yeah. One lawyer is at the podium. Okay. You have only asked to address the court. We don't go back and forth. Under the court's effective dismissal doctrine, a voluntary dismissal is appealable when an interlocutory ruling leaves the plaintiff with no realistic ability to continue litigating. That's exactly what happened here. I'm sorry. Does that mean you are conceding that your claims are meritless? I'm not following. No, I'm not conceding that they're meritless. I'm saying that because Belneft can, because of the threats made to our only witness, which is Vladlena Funk, she decided to drop her case and she's no longer a witness on the case with us. She's no longer appearing as a witness. I'm sorry. Are you, well then, to follow up on Judge Perez's question, are you saying you may think your claims have merit, but you know you can't prove them? No, we can prove them, but we're going to need to admit hearsay evidence because they've basically destroyed our witness. We don't have a witness anymore. But help me out though, if one has a trial looming in the future, the judge excludes key evidence, the party thinks, well, now I can't win. I will voluntarily dismiss my claims so that the court of appeals will review the evidentiary objections so that I can win the disputed future trial. Is that your view of what can be done on appeal? No, basically. Because that sounds like what you're arguing is that I'm going to lose the trial, so let's not go through the charade of just throwing the towel now. But you can't do that. No, I understand that. But, um, so what is your argument? My argument is if you look at the case law, um, it's basically saying by their actions, they've made this trial. No, the judge has made it, right? I mean, if you're saying hearsay is excluded, that's the problem? I'm saying that the problem is that we, my client passed away from injury sustained to when he was tortured in Belarus. And then, uh, the only witness we had was the co-plaintiff, Ladlena Funk. The fact that they threatened her, she decided to drop her claims and, and she's no longer cooperating. So besides her, we don't, we don't have anyone. Right, so what does that got to do with finality? What it has to do with finality is the fact that, um, the court routinely found appellate jurisdiction after voluntary dismissals. Uh, I, I gave you the case law. Well, yeah, it's not, first of all, it's not so routine, but secondly, the case that you're citing is one where the judge's ruling effectively denied the legal basis for the claim and all that was left to do was to dismiss it. That's a bit different. What you're saying is in effect, whenever a motion in limine is ruled upon and one doesn't like the result, uh, they can get interlocutory review by the simple expedient of saying, we're going to dismiss our claim voluntarily, but without prejudice to putting it back in after the interlocutory ruling gets reversed. I, I believe it was dismissed with prejudice, but without her testimony, there's no viable, viable path to trial. The doctrine focuses on practical reality or in this court's work. I'm sorry, counsel, it does not happen all the time. District judges throw out the key evidence for one side, so they're bound to lose the trial. And then what usually happens is they have the trial, they lose, and then they appeal, and then it brings up all of the, what would otherwise have been interlocutory ruling say on exclusion of evidence. Right? Well, I mean, why is this different? The reason it's different, Vladlena Funk was not thrown out. She was threatened by the same people who tortured her 10 years ago. No, wait, wait, wait, wait, wait, wait. First of all, what happened was, it's not a question of her being thrown out because of the, or, or being threatened out. It's a question of what happens after that, which is a ruling by the district court on a question of evidence, that question being whether these alleged threats warranted the admission of hearsay testimony from her under rule 804B6. Exactly. That's what the issue is, right? That's what the district court did, and that's what prejudices your case. Yes. Right. Okay. And just on a separate question, can you explain to me the threat? I mean, the threat is a threat that if she goes back to Belarus at some point, she will be held in contempt of an anti-suit injunction? Basically, the threat is this, that they may, as for us, for Vladlena and for her lawyers, they made a new law saying that, and they even used her maiden name to show that her mother and her sister, they live in Russia now. So, so they used her maiden name to show that, that they know where her mother and sister are. Wait a minute, but you've been litigating this case for a while, and your names are on the injunction for the lawsuit. So why is this new? The, the case has been litigated since 2014, and, and then it was stayed for a very long time because Mr. Zeltser passed away, and now- So you think they forgot in the interim, but then re-remembered? I guess I'm just not seeing how, if there was a threat, why this law that got passed in Belarus needed to be part of the intimidation? Well, the threat was that they sent an email to all of us, to Vladlena and to me saying that, that we would be breaking a law if we did this. And, and Vladlena, who's already been arrested in Belarus and tortured, she, she got scared and she decided not to go through with this. It's, I mean, we have case law in our briefs that speak on this exact issue of witness intimidation. There's some cases where the prosecutor says to, to someone, you know, if you're, if you're going to be a witness, then you're going to get arrested. And, and there's a lot of case law that we cited to show that threats like this should be sanctioned. Let me ask the question maybe a different way. If we disagree that the anti-foreign, uh, suit injunction from Belarus was a threat, can you still prevail? Is there a theory that you can still win if we disagree that it was a threat? Uh, yes, there is. Um, well, the district court's denial of sanctions rested on multiple legal errors. First, the court analyzed the motion as though it belonged to Mrs. Funk rather than Mrs. Zeltzer. Even before Mr. Zeltzer's sanction motion was filed, Mrs. Funk advised the court that she was withdrawing her claims and would not testify that trial. This issue was the impact of her unavailability on Mr. Zeltzer's ability to prove his case. Yet the court's reasoning mistakenly focused on the fact that, that sanctions would not protect Mrs. Funk if she prevailed at trial. That was not the motion before the court. No, no were any of her claims before the court as they were dismissed due to defendants' corrupt influence. All right. Mr. Palkman, we have kept you up past your allotted time. You have reserved four minutes for rebuttal. Why don't we hear from Mr. Caruso for the appellate? Good morning, your honors. May it please the court. Kenneth Caruso. I represent the defendants in this case, and I thought I would take the court up on its offer to lower the podium. So as to compensate. And you can move, tilt the microphones towards you. Very good. Is that satisfactory? Zeltzer moved for voluntary dismissal and the judge granted it. Rule 41, a two. This court has no jurisdiction over an appeal from a rule 41, a two dismissal because the plaintiff got what he asked for, except if the case falls within the effective dismissal, uh, doctrine. This case does not. The case falls within the effective dismissal doctrine. Only if the claims are dismissed as a matter of law here, judge. Jurisprudence though, it's depending upon the idea of the plaintiff not being able to get multiple bites of the apple. But I think he would agree that if he loses this appeal, then all of the claims are dismissed with the prejudice. Is that right? How, um, doesn't this, how doesn't his suit, uh, comport with the animating concern, uh, which is not letting them have, uh, multiple bites at the apple because he doesn't have any other pending claims that could be revived. I disagree, Your Honor, that I disagree that that is the animating concern. The point is the plaintiff got what he asked for. That's what the cases say. And unless there's a effective dismissal, there's no appellate jurisdiction. Um, you can even look at it in an article three way. There's no relief that the courts can continue to give. Well, then why doesn't that prove to be finality then, right? If there's no claim that could be revived, pending resolution of this appeal, then why can't we understand this appeal as meeting the finality requirement? The issue is not finality. The issue is whether the court, whether the court has appellate jurisdiction when the plaintiff got what he asked for, which was a voluntary dismissal with prejudice, it's final, there's no doubt it's final. That's not the issue here. The issue is, as I said, the plaintiff got what he asked for, and therefore the court has no appellate jurisdiction unless there was an effective dismissal. And there's no effective dismissal in this case because Judge Kogan did not rule on the merits. Judge Kogan merely made a discretionary ruling denying an inherent powers sanctions request for a default judgment. Turning to the merits, if I need to, a plaintiff asked. Actually, could we pause? I would have thought that your argument about a lack of appellate jurisdiction would be about a lack of finality. And I'm thinking Microsoft versus Baker, where someone lost a class certification motion and then they tried to voluntarily dismiss the case and then come up and argue, well, let's go back and talk about class certification. And in the court, I think it was Justice Ginsburg, right, said, can't do that. That's an end run against, around the finality rules. So I'm a little confused. Well, let me try to clarify. Microsoft is a Rule 23 case. This is a Rule 41 case. They're very different. The Rule 23 issue, what Justice Ginsburg was saying was, we're not going to separate the class action rulings and then have you go back and litigate more on the merits, if I remember the case properly. Well, it sounds like you're actually arguing against yourself there, aren't you? I mean, I wonder about this in your brief. You were saying that Microsoft doesn't undercut this court's prior precedents, which are about finality. And Microsoft is just an example of the same finality rule. I think what you're arguing here is based on the concurring opinion in Microsoft, which turns this into an Article 3 jurisdiction issue, as opposed to a statutory issue. Well, I'm arguing the Article 3 point in the alternative. What I think I argued in my briefs about Microsoft is, it's largely irrelevant. Right. Because we already had case law that was to the effect that this kind of maneuver violates the finality rule and means that it is not a final judgment, and therefore, the court lacks statutory appellate jurisdiction. Now, there's this interesting argument in the concurrence in Microsoft that goes deeper, one might say, and says, this is really an Article 3 jurisdiction issue because the plaintiff got what he asked for in Microsoft. And the same thing you would say applies here.  But I'm suggesting we may not need to reach that constitutional argument if this case also poses a finality problem under Section 1291. Perhaps I went too far when I said that it's not about finality. I, and perhaps I should argue it that way, but I'm focused very closely on the case law under 1291 that says, if the, if there's a voluntary dismissal under 41A2, there's no appellate jurisdiction unless there was an effective dismissal. Right. So why is this not an, Mr. Puckman's argument, as I understand it, is this was effectively a dismissal because it wipes his entire case off the, off the table. It was not an effective dismissal for at least two reasons. First, it was not a decision on the merits. Judge Kogan merely denied sanctions, thereby making a discretionary ruling. There is no disposition on the merits. Therefore, the case does not qualify as an effective dismissal. But let me look at it, let me come to it another way, because there's arguments. Well, I mean, there are two different things, and it's understandable that this is not so obvious because I think the appellant's brief kind of mixes together the two arguments. One is he's asking for a sanction, and there's a complex list of sanctions. He wants basically a kind of default judgment, and if not that, he wants certain allegations to be deemed accepted and so on.  But he also wants, it seems, as a sanction, the admissibility of the hearsay evidence. But then there's a separate issue that's not about sanctions at all. It's just a standard motion in limine that Ms. Funk's prior hearsay statements, and I'm not sure what that involves, declarations or deposition testimony or whatever, should be admissible under Rule 804b-6 because she was made unavailable by these purported threats. And that's just an evidentiary issue, not a sanctions issue. Well, that's right. To the extent this is an exclusion of evidence case, 804b-6, the plaintiff cannot appeal that. This is the Palmieri case from a long time ago. That's because if you want to appeal from a denial of a motion in limine, you have to go to trial, right, because the judge could change his mind on a mere decision in limine. They didn't go to trial. And a sanctions motion is sort of a fortiori from that in a way.  But that's just a denial of a request to impose some sort of sanction on the plaintiff. Yes. That doesn't have anything to do with the merits of the case. Correct. That's exactly right, Your Honor. And just I'll finish with this point that they couldn't go to trial. That is nonsense, complete nonsense. First of all, Judge Kogan, and I'm going to quote. Well, I think he meant they couldn't go to trial and prevail, right? I don't think you need to. Oh, I don't know about that. Well, no, what I'm saying is, like, I don't think you need to belabor too much of that. Can you talk about the cross appeal and the what relief are you seeking on the cross appeal? My cross appeal argues that the district court lacked personal jurisdiction over my clients because. Why isn't it advisory, right? Because you aren't asking for a change to the district court's judgment. I'm sorry, Your Honor. Can you repeat that? You aren't asking for a change in the district court's judgment. So why isn't that, aren't you asking an advisory opinion? No, no. In the alternative, I'm asking for dismissal, for lack of personal jurisdiction. If you get that far, I'm perfectly free. In the alternative in the sense that, is your cross appeal conditional? That if the other side wins, then you want us to reach personal jurisdiction? That's right. But if they don't win, are you asking us to reach personal jurisdiction? No. If I win on the appeal, my cross appeal is moot, academic, I'll withdraw it, whatever paperwork. Right, if the case is dismissed, if the appeal is dismissed for lack of appellate jurisdiction, you win, game over, and we need not reach your cross appeal, it would be moot. Precisely. If, on the other hand, they defeat your motion to dismiss the appeal for lack of jurisdiction, the next string to your bow is that the district court, you have a cross appeal, and say the district court erred in hearing the case at all because of lack of personal jurisdiction. Exactly right, Your Honor. And I'm having a little trouble with the merits of that one. So let me, I was imagining a hypothetical where some guy in New Jersey who's an adult, calls up or reaches out on the internet to an underage girl in New York and says, I'll take you to Six Flags Amusement Park if you just cross the bridge and meet me in Fort Lee. And what he does in fact when she meets him in Fort Lee is to kidnap and sexually assault her. You're telling me that New York would lack in persona jurisdiction over that gentleman? I'm not telling you that. Why not? Isn't that exactly what happened here?  In that case, the claim would have arisen from, would arise from, the telephone call into New York. Here... No, all the telephone call did on your logic is it was a preliminary matter. It's a step in the course of action that leads to the claim, but the claim is about his physically controlling her actions and sexually assaulting her in New Jersey. None of that happened in New York. And you're saying the same thing, it seems to me. You're saying that the fact that, according to the allegations of the complaint anyway, your client or people acting on their behalf came to New York so as to lure the plaintiffs to a place where they could be more conveniently snatched. Exactly what the guy in my hypothetical is doing. So why is that different? I think your honor has stated the case better than I could have. That is not different. That's not different because there was just a link in a causal chain. Phone call was a link in a causal chain. So New York would not have in persona jurisdiction in my hypothetical. Correct. Which strikes me as a little difficult to swallow because it's all part of the same plan. You see, that's the idea. It's not just that this happened and that led to this and this led to the next thing and improvising all the way. At some point, somebody did something illegal. What the allegation is, is this was the plan from the start, which was to come to New York, engage in desultory negotiations that are really fake, lure them to London, where at least the allegation is it's easier to kidnap people than in New York. I have to rely on the language of the cases, which is twofold. One, the arising from requirement requires that at least one element of the claim arise from the New York conduct. And here, with respect to battery, no element of battery arose from a meeting in New York. Battery occurred, allegedly, in prison in Belarus. I hear the argument. I understand the argument. May I? All right, well, let me just do this. We've kept you up past your time. I'll give you one more minute if you have one last point you need to add because then we need to get back to rebuttal for the appellant. One minute, though. Thank you. The argument that they couldn't try this case is nonsense for several reasons. Judge Kogan, and I'm going to quote this, Judge Kogan allowed into evidence the injunction that my client obtained in Belarus, which was supposedly so threatening. He allowed Zeltser to introduce the judgment into evidence before the jury to show how desperate the defendants are to prevent the jury from hearing the case. That may backfire and blow up in the defendant's face when the jury hears that. So there was that evidence that they had. Then they say Funk was unavailable. Nonsense. Serve her with a subpoena. They could have subpoenaed her. If she refused to testify, Judge Kogan had ample tools in the toolbox to compel testimony. They had the treating physician, Dr. Palkman, who probably would lack credibility because he's biased, considering he's counsel's father, but he was a witness. And they had numerous, Judge Kogan admitted at least two dozen exhibits that they offered.  We understand all of those arguments. Thank you very much. They could easily have gone to trial. Thank you. Thank you. Why don't we turn back to counsel for the appellant. Mr. Palkman? No, you may not. You need to file a request in advance for oral argument. That's why we have notices of appearance and all that sort of thing. So, Mr. Palkman, I understand you made the request for oral argument. If a different request had been made, then we could have accommodated that, but one counsel. Mr. Palkman, we will keep you to four minutes for rebuttal. Okay. We couldn't subpoena Mrs. Funk. We attempted to obtain time to pursue the avenue and the request that was denied. More fundamentally, Mrs. Funk had already withdrawn and refused to testify because of the Belarusian injunction directed specifically to her. The issue was not mere burden, which is sufficient to quash a subpoena. The witness believed with good reason that she faced serious consequences if she testified. This district court ruling left the estate without any realistic means of securing the testimony. I also want to say, without her testimony, there's no viable path to trial. The doctrine focuses on practical reality, or in this court's words, requires a pragmatic approach. The question is not what label is attached to the ruling. The question is whether the ruling made continued prosecution impossible. This case is not an ordinary sanctions dispute because Mr. Zeltser died before trial from the quadriplegia he suffered as a result of injuries he sustained in Belarus. The litigation depended on a single witness. Defendants obtained a Belarusian injunction directed at Ms. Funk. Understanding the Belarusian order to be a threat to her safety and that of her mother and her sister still residing in Russia, she begrudgingly dismissed her claims and refused to testify. The district court denied a requested adjournment that would have allowed us to seek to compel her appearance. At that point, proceeding to trial would have been futile and would have amounted to a waste of the court's, the jury's, and the party's resources. It was impossible to put on a case when we could introduce Ms. Funk's prior sworn statements to prove our case. When we couldn't. Could I just ask one question? I think one of my colleagues asked this earlier. Is the threat that you're talking about the threat of a contempt proceeding in Belarus in court for violating the anti-suit injunction? No, no, no. Or is it a threat of violence? No, no, this is criminal prosecution which in itself is threat of violence. When Mr. Manuel and Mrs. Funk were- But it is, but the threat is about legal sanctions that might take place in Belarus. The threat is about her not being able to go to any countries which are, which are allies of Belarus, like Russia, because her or her relatives would get sent to Belarus the same way she was sent to Belarus like 15 years ago. Just kidnapped and sent to Belarus. So if the threat is a threat of kidnapping if she went to Russia, that she and her family would be kidnapped. Why didn't that threat exist from 2014 on? I mean, what's new based on this injunction action? The threat is that these people are thugs and they engage in international kidnapping and poisoning people and whatever. And she's brave enough to litigate this case for 10 years. But then this threat of an injunction changes the game? Yes, because they specifically made a law for her where the law was made specifically in response- What does that have to do with her relatives? Let me simplify it. What it has to do with her relatives- Can her relatives be prosecuted if she violates the Anti-Injunction Act? They, instead of using her name, Vladlena Funk, they use- Can you just answer my question? Yes. Can her relatives be prosecuted in Belarus if she violates the Anti-Injunction Act? Yes, they can be harassed. They can be harassed. I didn't ask that. Can you answer my question? Can they be prosecuted criminally in Belarus if she violates the Anti-Injunction Act? Yes, because they would find a way- What they do is they make the laws after the fact. You're saying that they would create a sham prosecution of these other people? Yeah, they make the laws after the fact. I mean, that's- Very good. All right. That's in the newspapers, everything. We've heard both sides and we will take the case under advisement. Thank you.